```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                        :
KSP INVESTMENTS, INC.                   :     CASE NO. 1:07-CV-857
                                        :
         Plaintiff,                     :
                                        :
vs.                                     :     OPINION & ORDER
                                        :     [Resolving Doc. No. 54]
UNITED STATES OF AMERICA,               :
                                        :
         Defendant.                     :
                                        :
-------------------------------------------------------
```

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On March 22, 2007, Plaintiff KSP Investments, Inc. ("KSP"), as the Tax Matters Partner of AWG Leasing Trust, filed a complaint against the United States of America ("United States"). [Doc. 1.] The complaint challenges the Internal Revenue Service's proposed tax adjustments to the Plaintiff's 1999, 2000, 2001, 2002 and 2003 tax returns to disallow interest and depreciation deductions the Plaintiff had claimed regarding the sale and leaseback of a waste-to-energy facility in Germany (the "Facility"). *Id.* The case is set for trial on January 21, 2008.

On December 13, 2007, the Plaintiff filed a motion for an order to exclude the opinion testimony of the Defendant's expert witness Karel Schweiss ("Schweiss"). [Doc. 54.] The Defendant opposed the motion on December 17, 2007. [Doc. 57.] On December 26, 2007, the Plaintiff replied in support of its motion to exclude Schweiss' testimony. [Doc. 72.]

For the following reasons, this Court **DENIES** Plaintiff KSP's motion to exclude the opinion testimony of the Defendant's expert witness Karel Schweiss.

Case No. 1:07-CV-857
Gwin, J.

## I. Legal Standard

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. Fed. R. Evid. 702. Under Rule 702, testimony based on specialized knowledge is admissible if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* The Rule sets three additional prerequisites to admissibility:

(1) the testimony must be "based upon sufficient facts or data,"
(2) the testimony must be "the product of reliable principles and methods," and
(3) the witness must have "applied the principles and methods reliably to the facts of the case."

*Id.* As commentators have noted, Rule 702 evinces a liberal approach regarding admissibility of expert testimony. *See, e.g.,* Weinstein's Federal Evidence § 702.02, at 702-6. Under this liberal approach, expert testimony is presumptively admissible. *Id.* Further, experts need not confine their testimony to matters upon which they have personal knowledge. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993).

The Supreme Court in *Daubert* established the standard for admissibility of scientific expert testimony. *Id.* The requirement that "any and all scientific testimony or evidence admitted [be] not only relevant, but reliable," *id.* at 589, "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592-93. This test has also been applied to non-scientific expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999). The Sixth Circuit has instructed, "Non-scientific expert testimony must be evaluated pre-trial with an equal degree of exactitude, ensuring not that the expert's testimony is 'known to a certainty,' but that the expert is basing the testimony on 'the same level of intellectual rigor that

Case No. 1:07-CV-857
Gwin, J.

characterizes the practice in the relevant field.'" *Busch v. Dyno Nobel, Inc.,* 40 Fed. Appx. 947, 960 (6th Cir. 2002) (citing *Kumho,* 526 U.S. at 152).

In evaluating a motion to exclude expert testimony, the district court is charged with a "gatekeeper" function under Rule 702 of the Federal Rules of Evidence. Fed. R. Evid. 702. This "'gatekeeper inquiry' under Rule 702 is a flexible determination allowing the district court to exercise discretion, but 'there is no discretion regarding the actual performance of the gatekeeper function.'" *Busch,* 40 Fed. Appx. at 960-61 (internal citations omitted). The Sixth Circuit has held that, while the district court is not required to hold a *Daubert* hearing to determine the admissibility of expert testimony, the court must ensure that the disputed testimony is both relevant and reliable. *See Clay v. Ford Motor Co.,* 215 F.3d 663, 667 (6th Cir. 2000). Here, Plaintiff has filed the deposition of Schweiss. [Doc. 62.] The parties have additionally provided the Court with Schweiss' expert report, which was earlier provided to the Plaintiff. The Court finds sufficient information to determine whether Schweiss is qualified to testify under Rule 702.

**II. Discussion**

In its motion, Plaintiff KSP argues generally that the opinion testimony proffered by the Defendant's expert witness Karel Schweiss should be excluded because it is not reliable. [Doc. 54.] This Court disagrees.

At the outset, the Court notes that the Plaintiff does not challenge the relevance of the Schweiss testimony. Further, the Plaintiff does not dispute that Schweiss is qualified as an expert witness based upon his "knowledge, skill, experience, training, or education . . ." Fed. R. Evid. 702. Karel Schweiss is a German lawyer and tax consultant who has worked in the field of international corporate taxation for nearly twenty years. Schweiss Rep. at Appx. A.

Case No. 1:07-CV-857
Gwin, J.

To provide background, the Court briefly summarizes the testimony of Karel Schweiss. First, Schweiss provides a detailed history of the German tax system as it relates to the current SILO transaction and he explains the German tax implications that existed for the transaction in 1999 when the agreements were created. Schweiss Rep. at 11-15. Specifically, Schweiss describes the advance tax rulings that AWG received from German tax authorities prior to the execution of these agreements. *Id.* at 16-18. Pursuant to these binding letter rulings, Schweiss testifies that the SILO agreements did not transfer "economic ownership" of the Facility to the Plaintiff under German law. *Id.* at 16, 22. AWG, therefore, remained entitled to depreciate the Facility under German tax law and is considered the true owner of the waste-to-energy plant under German law.

Even more importantly, Schweiss provides an opinion as to the tax implications that AWG may face in 2024 when it must decide whether to exercise the service contract option or to purchase the Facility. *Id.* at 19-23. Schweiss concludes that, assuming that the German tax system does not drastically change between 1999 and 2024, AWG would recognize income on the approximately $500 million capital gain that it would receive in 2024 under the service contract option and would be required to pay taxes on that amount at a high rate in 2024. Schweiss notes that the German corporate income tax and trade income tax rate in 1999 was nearly 40%. *Id.* at 20-21. *See also* Doc. 62 at 78.

Schweiss thus concludes that AWG would likely face high taxes that would diminish the benefit AWG would otherwise receive should it forgo exercising the purchase option and instead enter a service contract in 2024. Schweiss suggests the service contract would have a prohibitively large tax liability, likely to be more than $100 million. These findings directly support the Government's position that the SILO transaction cannot justifiably be considered a transfer of a

-4-

Case No. 1:07-CV-857
Gwin, J.

depreciable ownership interest in the Facility from AWG to the Plaintiff.

Although the Plaintiff does not challenge the relevance or qualifications of expert witness Schweiss, the Plaintiff does argue that the testimony of Karel Schweiss relating to his opinion about the tax consequences of AWG's decision whether to exercise the service contract option in 2024 should be excluded because it is unreliable. [Doc. 54.] The Plaintiff claims that Schweiss' testimony is "purely speculative" because (1) he cannot predict with certainty whether a taxable event will occur for AWG in 2024, and (2) he cannot properly opine as to what the applicable German income tax rate or value of the Facility will be in 2024 and thus cannot speculate as to the economic consequences of AWG's decision to exercise the service contract option. *Id.* The Plaintiff, therefore, says that Schweiss' forecast as to the state of the German tax system in 2024 is overly speculative and thus not reliable as expert testimony.

After the Government opposed the motion on the grounds that the Schweiss testimony is sufficiently reliable, the Plaintiff then filed a reply brief in which it argued that Schweiss "improperly relies on German law as established in 2007, rather than viewing the transaction from the perspective of the parties in December 1999, when the deal was closed." [Doc. 72 at 1.] The Court notes at the outset that the Plaintiff did not raise the issue regarding the proper year from which Schweiss should base his predictions in their opening motion to exclude Schweiss' testimony. Instead, the Plaintiff only first attacks the reliability of Schweiss' testimony on these grounds in its reply. *Id.* Parties who fail to include an argument in an initial motion generally forfeit the argument. *American Trim, LLC v. Oracle Corp.*, 383 F.3d 462, 477 (6th Cir. 2004) ("This argument was raised for the first time in Oracle's reply brief, and this court has consistently held that we will not consider such arguments."); *United States v. Jerkins*, 871 F.2d 598, 602 n.3 (6th Cir.1989) ("It is impermissible

-5-

Case No. 1:07-CV-857
Gwin, J.

to mention an issue for the first time in a reply brief because the appellee then has no opportunity to respond.") (internal citations omitted). Although the Plaintiff forfeited the argument that Schweiss' testimony was irrelevant because he used 2007 instead of 1999 projections, the Court nevertheless examines this question in the context of the overall issue of reliability.

Under Rule 702 of the Federal Rules of Evidence, expert opinions "must be reliable in an evidentiary sense--that is, trustworthy." *Weinstein's Federal Evidence § 702.05*. In *Daubert*, the Supreme Court created a series of factors for courts to apply in determining reliability. *Daubert*, 509 U.S. at 592-94. Among these factors are:

- Whether the theory or technique that serves as the basis for the proposed expert testimony can be or has been tested.
- Whether the theory or technique has been published and subjected to peer review.
- The known or potential error rate experienced in the application of the particular technique.
- Whether the theory or technique is generally accepted in a definable relevant community.

*Id.* at 593-94.

In *Kumho*, the Supreme Court extended the gatekeeper function of district courts to cover non-scientific expert testimony. *Kumho*, 526 U.S. at 149. With regard to the *Daubert* factors, however, the *Kumho* Court stated:

> We also conclude that a trial court *may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability. But, as the Court stated in *Daubert*, the test of reliability is "flexible," and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination.

*Id.* at 141-42.

Schweiss is not a scientist; at least, not in the sense that the Supreme Court had in mind when

Case No. 1:07-CV-857
Gwin, J.

it decided *Daubert*. Rather, he is an attorney and tax consultant, and the methods and principles underlying the social sciences are less amenable to the factors listed in *Daubert*.

Rule 703 of the Federal Rules of Evidence explicitly provides that the "facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted." Fed. R. Evid. 703. The 1972 Advisory Committee Notes for Rule 703 specifically identify the hypothetical question as a proper mechanism by which experts may derive the facts or data that they rely upon in creating an opinion. Fed. R. Evid. 703 advisory committee's note.

Opinions provided by expert witnesses do not need to be proven "to a certainty," but such testimony "must be supported by 'more than subjective belief and unsupported speculation' and should be supported by 'good grounds,' based on what is known." *Pomella v. Regency Coach Lines, Ltd.,* 899 F.Supp. 335, 342 (E.D. Mich. 1995), quoting *Daubert*, 509 U.S. at 590. The Sixth Circuit has held expert testimony may be grounded in "assumed facts," so long as there is "some support for those assumptions in the record." *McLean v. 988011 Ontario Ltd.,* 224 F.3d 797, 801 (6th Cir. 2000) (internal citations omitted).

In this case, Karel Schweiss has used sufficient facts from the case and properly applied reliable methods to produce an educated opinion as to the German tax consequences of the SILO transaction in 2024. Schweiss bases his testimony exclusively on requests for advance tax rulings submitted by AWG, a summary of the transaction provided by the IRS, the expert report of Dr. Heisse, the advance tax rulings provided by German tax authorities, and the facts of the case.

Case No. 1:07-CV-857
Gwin, J.

Schweiss Rep. at 13. Neither side disputes the fact that it is impossible to predict with certainty the state of economic, legal, and political affairs in Germany sixteen years into the future. Rather, Schweiss presents well-reasoned analysis, based upon historical trends and economic indicia as it existed at the time of the creation of the agreements, that informs the Court as to a likely scenario that AWG may face in 2024.

The Court notes that the Schweiss testimony to which the Plaintiff objects can be properly classified as hypothetical questions posed to an expert witness. Karel Schweiss essentially was asked to opine after assuming that the German tax system in 2024 will be similar to its current configuration and then to give an opinion how it might affect AWG with respect to this transaction. Obviously Schweiss cannot predict the future with certainty but the Court finds this goes more to the weight that should be afforded his opinion. As stated above, hypothetical questions, if properly construed, are permissible tools that parties may use to derive expert testimony. *See, e.g., Mannino v. Int'l Mfg. Co.,* 650 F.2d 846, 852 (6th Cir. 1981). Here, Schweiss properly answered the hypothetical questions by referencing the facts supported by the record and by using his experience as an international tax attorney to explain the likely financial analysis that AWG utilized in deciding whether to enter into the transaction in 1999.

The Plaintiff's objections, including their argument that Schweiss improperly made his tax projections from facts as they existed in 2007 rather than based upon the situation as it was in 1999, go the weight that the Court should give the Schweiss testimony and do not render the testimony itself inadmissible. *See McLean,* 224 F.3d at 801 (concluding that "mere 'weaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility.'") (quoting *United States v. L.E. Cooke Co.,* 991 F.2d 336, 342 (6th Cir. 1993)).

Case No. 1:07-CV-857
Gwin, J.

Indeed, the Sixth Circuit has held that "[w]here an expert's testimony amounts to 'mere guess or speculation,' the court should exclude his testimony, but where the opinion has a reasonable factual basis, it should not be excluded. Rather, it is up to opposing counsel to inquire into the expert's factual basis." *L.E. Cooke Co.*, 991 F.2d at 342. The Plaintiff's concerns about the weight that should be given to Schweiss' hypothesis about the 2024 tax implications of the transaction may be properly assessed through cross-examination in this bench trial. *See Daubert*, 509 U.S. at 596.

Importantly, this Court also notes that the significance of Schweiss' testimony does not depend upon the accuracy of his prediction that AWG may be forced to pay over $100 million in taxes if it elects the service contract option in 2024. Schweiss' testimony is helpful and important, rather, in explaining the reasonable beliefs about the tax implications of their actions that objective parties with adverse interests would have held in 1999 in deciding whether or not to enter into the SILO transaction. This question goes to the weight of the evidence and not the admissibility of the expert testimony.

The Court thus finds that the Schweiss testimony is sufficiently reliable.

### III. Conclusion

For the reasons stated above, this Court **DENIES** the Plaintiff's motion to exclude the opinion testimony of the Defendant's expert witness Karel Schweiss.

IT IS SO ORDERED.

Dated: January 17, 2008     s/     *James S. Gwin*
                            JAMES S. GWIN
                            UNITED STATES DISTRICT JUDGE